UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN (GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION), *et al.*, | ) ) ) ) ) ) | No. 16 C 2730 |
| Plaintiffs, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | |
| UNION PACIFIC RAILROAD CO., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Three divisions of the Brotherhood of Locomotive Engineers and Trainmen, a union of trade engineers, brought this action against Union Pacific Railroad for violations of the Railway Labor Act, 45 U.S.C. § 151, *et seq*. R. 4, Compl.[1] The Brotherhood claims that Union Pacific, which employs Brotherhood members, violated the Act when the railroad implemented a new disciplinary policy—one that allegedly conflicts with the parties' collective bargaining agreements—without first bargaining to impasse. *Id.* ¶¶ 2-3. The Brotherhood also claims that Union Pacific violated the Act's prohibition on direct dealing by soliciting employee input before implementing the new policy. *Id.* ¶¶ 7, 45.

The parties have filed dueling motions: the Brotherhood seeks a preliminary injunction against the implementation of the new disciplinary policy, R. 24, Pl.'s

---

[1]Citations to the docket are indicated by "R." followed by the docket entry and, when necessary, a page or paragraph number.

Mot. for Prelim. Inj., and Union Pacific seeks dismissal of the Complaint for lack of subject-matter jurisdiction and also asks for judgment on the pleadings, R. 16, Def.'s Mot. to Dismiss. For the reasons discussed below, the motion to dismiss is granted (though not on all the grounds sought by the railroad) and the motion for preliminary injunction is denied.

**I. Background**

For the purposes of the motion to dismiss, the facts alleged in the Complaint are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Union Pacific is a Class I Rail Carrier, Compl. ¶ 9, and is subject to the Railway Labor Act, *see* 45 U.S.C. § 151. It employs locomotive engineers who are unionized under various divisions of the Brotherhood. Compl. ¶ 8. The Brotherhood and Union Pacific (or their various predecessors-in-interest) have entered into a number of collective bargaining agreements over the years. *Id.* ¶¶ 12, 27; R. 17-1, Phillips Aff. ¶¶ 4-6; *see also* R. 4-2, Compl. at Exh. B, 1996 Sys. Agmt.; R. 17-21, Phillips Aff. at Exh. T, S. Pac. W. Lines Agmt.

One of those agreements, the Southern Pacific Western Lines Agreement,[2] contains a provision that addresses how long employee-disciplinary information can be kept in employee files:

---

[2]This agreement does not extend to all Union Pacific engineers. Because it was made between the Brotherhood and a southwestern railroad that later merged into Union Pacific, the agreement is limited in geographic scope to the former lines of the southwestern railroad. Phillips Aff. ¶ 6. However, this limitation is not relevant to the Court's legal analysis.

> Information concerning discipline more than five (5) years old contained in personal records will be expunged with the exception of suspension or dismissal involving violations of [Federal Railroad Administration] regulations or Safety Rules, which were upheld in arbitration.

S. Pac. W. Lines Agmt. at 191 (the parties refer to this clause as "Article 18"). As its text says, Article 18 sets a general ban on keeping disciplinary records for longer than five years, but with an exception for violations of Federal Railroad Administration regulations and safety rules.

In September 2015, Union Pacific issued a policy entitled Managing Agreement Professionals for Success (known by its acronym, "MAPS"). Compl. ¶ 16; R. 4-1, Compl. at Exh. A, MAPS Policy. Before issuing the policy, the railroad had polled its engineers on their preferred changes to existing discipline rules. Compl. ¶ 45. MAPS covers a number of human-resources-related topics, but this lawsuit centers around Section 3.2.1, a disciplinary rule that adopts a "three-strikes" approach for Federal Railroad Administration decertifications:

> **3.2.1.** Multiple FRA Revocations: If an employee violates a decertification rule and there are two prior FRA license revocations on the employee's work history … the employee may be charged with violation of Rule 1.6 [governing prohibited conduct] under MAPS after evaluation of the employee's work history by the Superintendent and the Regional Vice President.

MAPS Policy at 4. In a nutshell, when an engineer picks up a third Federal Railroad Administration license revocation, he or she is also subject to being fired. Compl. ¶ 28.

MAPS went into effect without any negotiation between Union Pacific and the Brotherhood. Compl. ¶ 30. The Brotherhood quickly protested, but Union Pacific

asserted its right to implement MAPS without consulting the Brotherhood first. *Id.* ¶¶ 31-33. This lawsuit followed.

**II. Legal Standard**

Union Pacific brings its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(c). A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), while a Rule 12(c) motion tests the sufficiency of the plaintiff's claim for relief based on the pleadings, *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). When reviewing a motion for judgment on the pleadings, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995); *Hayes*, 670 F.3d at 813. A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes*, 670 F.3d at 813. Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id.* In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

In order to survive a Rule 12(b)(1) motion, the plaintiff must establish that the district court has jurisdiction over an action. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the … Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *United Phosphorus*, 322 F.3d at 946. But "if the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, [then] the movant may use affidavits and other material to support the motion." *Id.* (emphasis in original).

### III. Analysis
### A. Count 1: Major or Minor Dispute

If Union Pacific's motion to dismiss is a winner, then by definition the Brotherhood's preliminary-injunction motion must fail, so the Court will consider the dismissal motion first. To do that, some background on the Railway Labor Act's analytical framework is needed. The Act governs railway-labor relations and requires carriers to "exert every reasonable effort to make and maintain [collective bargaining] agreements concerning rates of pay, rules, and working conditions." 45 U.S.C. § 152 ¶ First. When a dispute arises between carrier and labor, courts must first figure out whether the dispute is "major" or "minor" (those are terms of art under the case law interpreting the Act). *Consol. Rail Corp. v. Ry. Labor Execs.'*

5

*Ass'n*, 491 U.S. 299, 302 (1989) (citation omitted). The resulting categorization determines whether the district court has jurisdiction over the dispute: yes if major, no if minor.[3]

Major disputes are those that involve the formation of collective bargaining agreements or efforts to change existing agreements. *Consol. Rail*, 491 U.S. at 302 (citing *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 (1945)); *see also* 45 U.S.C. § 152 ¶ Seventh. One way to think about major disputes is that "[t]hey look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Id.* If a collective bargaining agreement is already in place, then carriers cannot "change the rates of pay, rules, or working conditions … embodied in [the] agreements except in the manner prescribed in such agreements or" through the negotiation and mediation procedures set forth in the Act. *Id.* "The district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures … ." *Consol. Rail*, 491 U.S. at 303 (citations omitted).

In contrast, district courts do *not* have jurisdiction over minor disputes, which must be worked out in "arbitration before the National Railroad Adjustment Board, or before an adjustment board established by the employer and the unions representing the employees." *Consol. Rail*, 491 U.S. at 303 (citing 45 U.S.C. § 153). Minor disputes are those that "grow … out of grievances or out of the interpretation

---

[3]Although prior decisions inaccurately used the term "lack of jurisdiction" to describe what really were *merits* decisions, Union Pacific's argument here really is about subject-matter jurisdiction, that is, whether this Court has the authority to adjudicate the parties' dispute.

or application" of existing collective bargaining agreements. *Id.* (citing 45 U.S.C. § 152 ¶ Sixth). Unlike in major disputes, the carrier does not have a statutory obligation to maintain the status quo while a minor dispute is before the arbitral panel; it is generally free to act in accordance with its understanding of its rights under the agreement unless and until the arbitral board decides otherwise. *Consol. Rail*, 491 U.S. at 304 (citations omitted).

So, in order to decide the parties' dueling motions here, the Court must classify the parties' dispute as either a major or minor one. There is an overall preference for arbitral decision-making in this railway-labor context: if a party asserts that the dispute is minor, and that assertion is "neither obviously insubstantial or frivolous, nor made in bad faith," then the Court must characterize the dispute as minor and let the matter go to arbitration. *Consol. Rail*, 491 U.S. at 310. Here, if Union Pacific can advance a non-frivolous argument that the collective bargaining agreements do not bar it from rolling out the three-strikes disciplinary policy without bargaining over the policy, then the disputes arising out of that decision would fall outside this Court's jurisdiction. *See id.*

Union Pacific has met the standard. The railroad offers the affidavit of its General Director of Labor Relations, Michael Phillips, who avers that the railroad has an established practice of changing disciplinary policies without bargaining with the Brotherhood. R. 17, Def.'s Br. at 2; Phillips Aff. ¶ 10.; *see also* R. 17-12, UPGRADE Correspondence. The railroad also points out that there is no particular provision of any collective bargaining agreement that bans Union Pacific from

7

implementing the three-strikes disciplinary policy. The absence of a ban is important because it allows the past practice to create an implied agreement between the railroad and labor. Collective bargaining agreements are "not [] ordinary contract[s]," but rather "generalized code[s] to govern a myriad of cases which the draftsmen cannot wholly anticipate." *Consol. Rail*, 491 U.S. at 311-12. The Railway Labor Act does not require these agreements to represent a "meeting of the minds" as to "all the details of particular practices" for the agreements to justify those practices. *Id.* at 317-318. Instead, agreements may "include implied, as well as express, terms."[4] *Consol. Rail*, 491 U.S. at 311. These implied terms are

---

[4]In its brief, Union Pacific impliedly argues that the absence of an express *prohibition* against unilateral implementation of disciplinary policies is enough to qualify this as a minor dispute. Def.'s Br. at 10-11. The railroad cites three cases in support of this argument. *See id.* Two of those cases could be construed to support Union Pacific, but they were decided by other circuits. *See Airline Profess. Ass'n v. ABX Air, Inc.*, 400 F.3d 411, 416 (6th Cir. 2005) (holding that, because "the [collective bargaining agreement] is silent as to ABX's prerogative to require [employee] to submit to an [independent medical examination] … this dispute is a minor one," unless the agreement or the law otherwise prohibits ABX's conduct); *Empresa Ecuatoriana De Aviacion, S.A. v. Dist. Lodge No. 100*, 690 F.2d 838, 843 (11th Cir. 1982) ("Accepting the union's contention—that assertions by the airline of a managerial power not included within the bargaining agreement is an effort to amend the agreement to give management that power—would convert many minor disputes into major disputes and alter the basic dichotomy of the [Railway Labor] Act.").

The third—the only Seventh Circuit case cited—comes out differently. *See Chi. & N.W. Transp. Co. v. Ry. Labor Execs. Ass'n*, 908 F.2d 144 (7th Cir. 1990). Union Pacific relies on that case for the proposition that, "where [a] collective bargaining agreement is silent on [a] disputed point, [the] dispute is minor," Def.'s Br. at 11, but that overstates the holding of *Chicago & North Western Transportation*. The case involved a dispute over a railroad's right to sell an unprofitable line. 908 F.2d at 147. By selling the line, rather than abandoning it as the railroad had done in the past, the railroad freed itself from the duty to provide adversely affected workers with certain protections, such as generous severance pay. *Id.* Nothing in the parties' collective bargaining agreements explicitly forbade the railroad to sell the line. *Id.* at 151. But the unions argued that the decision to sell rather than abandon the line constituted a "change in agreements affecting rates of pay, rules, or working conditions" and therefore could only be undertaken after negotiation with the union. *Id.* at 147.

8

established by looking at evidence of past "practice, usage and custom"—that is, if a carrier has long behaved in a certain way, then that behavior will be read into the collective bargaining agreement as a permitted practice under the implied terms of the agreement. *Bhd. of Maint. of Way Employees v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 641 (7th Cir. 1997) (citations and internal quotations omitted). Indeed, the seminal Supreme Court case on this issue presented just that type of implied term, arising from an employer's past practice. *Consol. Rail*, 491 U.S. at 320 (holding that carrier's unilateral implementation of a drug-screening policy was arguably justified because the carrier's long-term practice of conducting physical examinations on employees established that practice as an implied term of the collective bargaining agreement). So, in the absence of an explicit ban in the collective bargaining agreements on implementing a disciplinary policy like MAPS, and combined with the arguable past practice proffered by Union Pacific, this dispute is minor and this Court lacks jurisdiction.

---

Although the Seventh Circuit held that negotiation was not required, its decision did *not* rest solely on the agreement's silence as to the carrier's right to sell. *Id.* at 151-152. Instead, the court stressed that the decision to sell the line fell within the carrier's "management prerogatives, the class of decisions that are not decisions about rates of pay, rules, or working conditions." *Id.* at 151 (citation omitted). Management-prerogative matters include "executive perks, recapitalization, rates charged shippers, and other matters that are only indirectly—though often vitally—related to the status of the workers represented by the union." *Id.* at 152. This the Seventh Circuit contrasted with "decision[s] about the utilization of labor or about wages, work rules, working conditions, job rights, etc." *Id.* So *Chicago & North Western Transportation* does not go so far as to hold that contractual silence alone compels the classification of a dispute as minor. Instead, the Court must consider the employer's established practices, determine "whether [those practices] constitute an implied condition of the working relationship of the parties," *Ry. Labor Execs. Ass'n v. Norfolk & W. Ry. Co.*, 659 F. Supp. 325, 330 (N.D. Ill. 1987) (citing *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 153-54 (1969)), and only then determine whether the disputed actions constitute a major or minor dispute, *id.*

9

So far, so good for Union Pacific. But against this, the Brotherhood offers two counter-arguments, one based on a factual dispute and the other on legal interpretation. First, the Brotherhood challenges Union Pacific's factual contention that the carrier has a practice of unilaterally implementing disciplinary policies. *See* R. 25, Pl.'s Resp. Br. at 3-5. To the contrary, the Brotherhood asserts, the union and railroad "have continuously bargained over discipline." *Id.* at 8; *see also* R. 25-1, Hannah Aff. ¶¶ 24-35, 39-41; R. 25-2, Bagby Aff. ¶¶ 5-14. Given its history of negotiation, says the Brotherhood, Union Pacific cannot now claim that it has an implied contractual right to take unilateral action. Pl.'s Resp. Br. at 3-5.

But the resolution of the competing factual positions belongs in arbitration. In order to classify the parties' dispute as a minor one, Union Pacific does not need to *prove* a practice of unilateral disciplinary policy implementation. It only needs to articulate an argument that is "neither obviously insubstantial or frivolous, nor made in bad faith." *See Consol. Rail,* 491 U.S. at 310. That it has done. Union Pacific has provided evidence in the form of the affidavit from its General Director of Labor Relations, as well as records of prior disciplinary policies that were avowedly implemented without bargaining. *See* Phillips Aff. ¶ 10 ("Union Pacific instituted its "UPGRADE" discipline policy—the predecessor to MAPS—and subsequently modified it on multiple occasions, without any bargaining with the unions over it."); UPGRADE Correspondence (correspondence between the Brotherhood and Union Pacific concerning Union Pacific's unilateral

10

implementation of UPGRADE). That evidence clears the low bar of establishing non-frivolousness. So the Brotherhood's first counter-argument fails.

The Brotherhood's second argument is that MAPS is not "arguably" permitted by existing collective bargaining agreements because it directly contradicts one of those agreements. Pl.'s Resp. Br. at 6-7. Specifically, the Brotherhood claims that Section 3.2.1 of MAPS conflicts with Article 18 of the Southern Pacific Western Lines Agreement (a collective bargaining agreement between the Brotherhood and one of Union Pacific's predecessors-in-interest).[5] *Id.* Remember that Article 18 contains a five-year expungement for discipline, but with an important exception:

> Information concerning discipline more than five (5) years old contained in personal records will be expunged with the exception of suspension or dismissal involving violations of [Federal Railroad Administration] regulations or Safety Rules, which were upheld in arbitration.

S. Pac. W. Lines Agmt. at 191. The Brotherhood interprets this to mean that Union Pacific can only track an engineer's license revocations for a five-year retention period; after that, any mention of the revocation must be expunged from the engineer's record. Compl. ¶¶ 25-26.

MAPS, on the other hand, adopts a "three-strikes" approach towards Federal Railroad Administration decertifications, with no five-year limitation. Under that policy, Union Pacific has the right to discipline and even fire an engineer for

---

[5]In the Complaint, the Brotherhood alleged that MAPS also violated the 1996 System Agreement, another collective bargaining agreement. *See* Compl. ¶¶ 12-22. The parties have since resolved that dispute, so the Court need not address it. *See* Pl.'s Resp. Br. at 5.

11

"violating a decertification rule" if there are "two prior FRA license revocations in the employee's work history." MAPS Policy at 4; Compl. ¶ 28. So, as written, MAPS makes no distinction between license revocations within the past five years and those incurred more than five years ago. *Id.* The Brotherhood posits that, because MAPS allows Union Pacific to consider license revocations outside of the Article 18 retention period, the new policy directly contradicts a collective bargaining agreement and constitutes a change in working conditions—making this a major dispute.

But Article 18 and Section 3.2.1 of MAPS can be reasonably read so that they are not in conflict. At the very least, Union Pacific has plausibly interpreted the provisions that way. Under Article 18, the carrier only promises to expunge "information concerning *discipline* more than five" years old from personal records. *See* S. Pac. W. Lines Agmt. at 191 (emphasis added). But a license revocation is arguably distinct from mere discipline. Although the carrier, rather than a federal agency, is responsible for issuing and revoking licenses, *see* 49 C.F.R. § 240.101, the criteria and procedures for revocation are set by federal regulation, *see* 49 C.F.R. § 240.307(a) ("[A] railroad that … acquires information regarding violations of § 240.117(e) or § 240.119(c) of this chapter, which convinces the railroad that the person no longer meets the qualifications of this part, shall revoke the person's certificate as a qualified locomotive engineer.").

And even if license revocations *inarguably* fell under the definition of "discipline," Union Pacific contends that Article 18 contains a specific carve-out for

12

license revocations, because it exempts information about "suspension[s] or dismissal[s] involving violations of [Federal Railroad Administration] regulations or Safety Rules, which were upheld in arbitration" from expungement. S. Pac. W. Lines Agmt. at 191. There is some ambiguity as to what term the last clause—"which were upheld in arbitration"—modifies. Does it modify *both* of the types of "suspension[s] or dismissal[s]," that is, violations of Federal Railroad Administration regulations *and* violations of Safety Rules? If so, then the carve-out would apply only to license revocations that have been "upheld in arbitration." Or does "upheld in arbitration" only apply to violations of "Safety Rules"? If so, then the exemption applies to *all* license revocations, even if not "upheld in arbitration." On the one hand, a strict-grammar reading would suggest that "upheld in arbitration" modifies all "suspension[s] or dismissal[s]," because that is what gets upheld (or rejected) in arbitration—suspensions or dismissals. It does not make sense to speak of "violations" being "upheld" in arbitration. On the other hand, Union Pacific makes a good point when it argues that "suspension[s] or dismissal[s] involving violations of Federal Railroad Administration regulations" *cannot* be "upheld in arbitration," because they are subject to review only by the Locomotive Engineer Review Board and *not* by an arbitration board. 49 C.F.R. § 240.401; *Smith v. Federal R.R. Admin.*, 398 Fed. App'x 601, 602 (D.C. Cir. 2010). Applying "upheld in arbitration" to violations of Federal Railroad Administration violations would mean that those violations would never be covered by the exemption, which makes no sense.

13

In any case, it is not necessary to choose one construction over the other in this litigation. To repeat, in order to make this a "minor" dispute, Union Pacific need only show that MAPS is *arguably* not in conflict with Article 18. In light of the reasonableness of interpreting Article 18 the way that Union Pacific proposes—that is, the "upheld in arbitration" requirement applies only to violations of Safety Rules, and not to license revocations—Union Pacific's proposal is not frivolous, so the dispute is minor. There is no subject-matter jurisdiction over Count 1 of the complaint.[6]

## B. Count 2: Direct Dealing

In Count 2, the Brotherhood claims that Union Pacific violated the Railway Labor Act's ban against direct dealing when it polled engineers about their preferences on changes in disciplinary policy. Compl. ¶¶ 44-45. The Brotherhood argues that this violated the Railway Labor Act so egregiously that federal jurisdiction is engaged. It is true that a "federal court may exercise jurisdiction over violations of the Railway Labor Act without regard to the court's characterization of the dispute as major or minor." *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emp. v. Atchison, Topeka & Santa Fe Ry.*, 847 F.2d 403, 408 (7th

---

[6] The Brotherhood offers one other alleged source of conflict against the three-strikes policy. Specifically, the union argues that there is a body of contracts between individual engineers accused of misconduct and Union Pacific. In those contracts, the engineers agreed to accept discipline and, in exchange, Union Pacific promised to retain records of their prior decertifications for a shorter period than dictated by Article 18. *See* Pl.'s Resp. Br. at 7, Hannah Aff. ¶¶ 17-20. But if the entire purpose of these contracts is to provide an individualized resolution outside of the carrier's general disciplinary policy, it should make no difference whether that general policy is MAPS or Article 18. So the individual contracts cannot be said to contradict MAPS, just as they did not contradict Article 18 (or whatever general disciplinary policy was in place when the contracts were executed).

14

Cir. 1988). But that authority to exercise jurisdiction is "limited to exceptional circumstances." *Id.* Really there are only two instances where jurisdiction is triggered: cases where extrajudicial dispute-resolution is unavailable or ineffective, and cases where the employer evinces a "specific intent to weaken or destroy a union." *Id.* at 411.

The second category plainly does not apply here. The Brotherhood has not alleged that the railroad was trying to weaken or destroy the union by implementing the three-strikes policy. And it is not plausible that soliciting employee preferences on a new disciplinary policy goes so far as to weaken or destroy the Brotherhood.

As for the first category, that argument for jurisdiction is typically invoked where the Act's dispute-resolution framework does not work because the union cannot represent the employees' interests. *Bhd. of Ry., Airline & S.S. Clerks,* 847 F.2d at 409-411 (citing *Conrad v. Delta Airlines,* 494 F.2d 914 (7th Cir. 1974) (employee discharged before union was certified); *Burke v. Compania Mexicana de Aviacion*, 433 F.2d 1031 (9th Cir. 1970) (same); *Brady v. Trans World Airlines*, 401 F.2d 87 (3d Cir. 1969) (employee sued union along with employer)). That is not the case here: the arbitration process is available to the Brotherhood for its challenge to the three-strikes policy. *See Bhd. of Ry., Airline & S.S. Clerks*, 847 F.2d at 411 (holding that the administrative channels provided by the Railway Labor Act could adequately address union's direct-dealing claim). Maybe the Brotherhood will lose in that process (maybe it already has), but arbitration is *available*, which is all that

is required. There is no subject-matter jurisdiction over Count 2 of the complaint either.

## IV. Conclusion

For the reasons stated above, Union Pacific's motion to dismiss for lack of jurisdiction, R. 16, is granted. The Court cannot exercise subject-matter jurisdiction over either count of the Complaint, so both are dismissed under Federal Rule of Civil Procedure 12(b)(1). (The Court need not decide any aspect of Union Pacific's motion as a motion for judgment on the pleadings.) In light of the dismissal, the Brotherhood's motion for preliminary injunction is denied. The status hearing of March 21, 2017 is vacated.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 17, 2017